## THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| **JULIO SUAREZ, et al.,** | : | |
| | : | |
| | : | |
| **Appellees/Cross-Appellants** | : | |
| | : | |
| **v.** | : | **Nos. 24-2395, 24-2436,** |
| | : | **& 24-2602** |
| | : | |
| **COMMISSIONER PENNSYLVANIA** | : | |
| **STATE POLICE,** | : | |
| | : | |
| **Appellant/Cross-Appellee** | : | |

| | | |
|---|---|---|
| **TAYLOR BROWN, et al.,** | : | |
| | : | |
| | : | |
| **Appellants** | : | |
| | : | |
| **v.** | : | **No. 24-2591** |
| | : | |
| **COMMISSIONER PENNSYLVANIA** | : | |
| **STATE POLICE,** | : | |
| | : | |
| **Appellee** | : | |

## COMMISSIONER OF THE PENNSYLVANIA STATE POLICE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' SEPTEMBER 20, 2024 MOTION AND CROSS-MOTION TO HOLD THESE CASES *C.A.V.* PENDING THIS COURT'S DECISION IN *KOONS, ET AL V. ATTORNEY GENERAL OF NEW JERSEY*

Undersigned counsel for Col. Christopher Paris, Commissioner of the Pennsylvania State Police (PSP) (defendant below)[1] hereby responds to the motion filed by the *Suarez* Plaintiffs[2] in these consolidated appeals. *Suarez* Plaintiffs first ask this Court to lift and vacate the District Court's September 16, 2024 order granting the Commissioner's request to stay its order enjoining enforcement of a decades-old Pennsylvania statute. Motion at 5-20. If—and only if—this Court denies that request, *Suarez* Plaintiffs request, in the alternative, expedited review of this appeal. *Id.* at 20-21.

Both requests should be denied. The District Court did not abuse its discretion when it weighed the equities and concluded that a stay of its order pending appeal was appropriate. And Plaintiffs fail to articulate any "exceptional reason" warranting expedited review, as required under this Court's Local Rules. 3d Cir. L.A.R. 4.1.

---

[1]    At the outset of this suit, the PSP Commissioner was Col. Robert Evanchick, who was sued in his official capacity only. When Col. Paris became PSP Commissioner, he was automatically substituted as Defendant. *See* Fed.R.Civ.P. 25(d).

[2]    Plaintiffs in the *Suarez* appeals: are Julio Suarez; Daniel Binderup; the Firearms Policy Coalition; and the Second Amendment Foundation (collectively, "*Suarez* Plaintiffs"). The *Suarez* Plaintiffs are appellees in the Commissioner's appeal, docketed at 24-2395. The *Suarez* Plaintiffs are cross-appellants in their appeals, docketed at 24-2436 & 24-2602.

Plaintiffs in the *Brown* appeal are: Taylor Brown; Shawn Palmer; Max Ness; and the Second Amendment Foundation (collectively, "*Brown* Plaintiffs"). The *Brown* Plaintiffs appeal from the District Court's order in separate case denying their request for a preliminary injunction. Their appeal is docketed at 24-2491.

1

In its underlying decision below, the District Court enjoined the Commissioner from enforcing a provision of Pennsylvania's Uniform Firearms Act, which prohibits unlicensed individuals from carring loaded, operable firearms when they travel in vehicles, 18 Pa.C.S. §§ 6106(a)(1). *Suarez*, Memorandum at 30-35 (Dist. Ct. Dkt. ECF No. 61). But the District Court then concluded that it was appropriate to stay that order pending appeal. *Suarez*, Stay Order (Dist. Ct. Dkt. ECF No. 81). The District Court determined that the Commissioner demonstrated a "reasonable chance" of prevailing on appeal in light of the many "lingering uncertainties" about how to apply the High Court's historical test for Second Amendment cases. *Id.* at 3 (citations omitted). The District Court also determined that the likelihood of harm to the State Police and the public in enjoining one of Pennsylvania's democratically enacted gun laws outweighed any risk of the "unlikely" harm to Plaintiffs "who are still permitted to possess firearm[s] in their homes and places of business and to openly carry . . . in public for purposes of self-defense." *Id.* at 3-4.

Respectfully, the District Court, which had been presiding over this case for more than three years, was in the best position to weigh these considerations and determine whether a stay was warranted. *Suarez* Plaintiffs' unfocused motion in this Court—which spends significant time complaining about local district court rules

and the timing of the Commissioner's motion below—comes nowhere near demonstrating that the District Court abused its discretion.

Not only should this Court decline to expedite this appeal, the Commissioner respectfully requests that this Court delay any briefing, argument, or decision in this case until after this Court decides *Koons, et al v. Attorney General of New Jersey*, 23-1900 & 23-2043. In *Koons*, this Court is poised to determine the constitutionality of a New Jersey public carry statute, which, like Pennsylvania's, regulates the transportation of loaded, operable firearms in private vehicles. N.J. Stat. Ann. § 2C:58-4.6(b)(1). Because this Court's decision in *Koons* will very likely impact the result here, and that case has already been fully briefed and argued, the most efficient use of the parties' and the Court's resources is to delay further action in this case until *Koons* is decided.

## BACKGROUND

Under Pennsylvania's Uniform Firearms Act, an individual must have a valid license in order to carry a firearm "concealed on or about his person" or in "any vehicle." 18 Pa.C.S. § 6106(a)(1). But because Pennsylvania law does not prohibit unlicensed open-carry, and allows individuals to travel with unloaded, secured firearms to-and-from most places, Pennsylvanians without concealed-carry licenses may still transport and carry firearms throughout the Commonwealth. *See, e.g.*, 18 Pa.C.S. § 6106(b) (exception to licensing requirement allowing individuals to

transport unloaded firearms when traveling to-and-from target practice); 18 Pa.C.S. § 6106(b)(8) (exception to licensing requirement allowing individuals to transport "a firearm which is not loaded and in a secure wrapper" to-and-from various places); 18 Pa.C.S. § 6106(b)(9) (exception to licensing requirement for individuals transporting firearms for hunting).

The individual *Suarez* Plaintiffs are ineligible to obtain concealed-carry licenses in Pennsylvania because they have committed certain crimes. 18 Pa.C.S. § 6109(e)(1)(vii); *see also Suarez*, Memorandum at 3-4 (Dist. Ct. Dkt. ECF No. 61).[3] But, as the District Court below correctly observed, *Suarez* Plaintiffs still have significant firearms rights under Pennsylvania law, even without the ability to obtain concealed-carry licenses. *Suarez* Plaintiffs may still possess firearms in their homes and places of business, may carry firearms openly in public, and may transport secured, unloaded firearms in their vehicles as they travel to-and-from various places. These plaintiffs are merely limited from driving with loaded, operable firearms because, due to their past criminal activities, they may not obtain concealed-carry licenses. 18 Pa.C.S. § 6106(a)(1). That limitation—and whether it may be

---

[3]     The *Brown* Plaintiffs' ineligibility stems from the fact that they are under 21-years-of-age. 18 Pa.C.S. § 6109(b).

enforced by the State Police while this appeal is pending—is the sole focus of the instant motion.[4]

The District Court determined that the vehicle provision is facially invalid under the Second Amendment and enjoined the Commissioner from enforcing it. *Suarez*, Memorandum at 30-35 (Dist. Ct. Dkt. ECF No. 61); *Suarez*, Order ¶ 3 (Dist. Ct. Dkt. ECF No. 62). The Commissioner appealed from the District Court's order in and moved for a stay in the District Court. *Suarez*, Commissioner's Motion and Supporting Brief (Dist. Ct. Dkt. ECF Nos. 75, 76). The District Court granted the Commissioner's stay motion, and *Suarez* Plaintiffs now seek to have that stay lifted and vacated.[5]

---

[4]    Although there are other statutory provisions at issue in these appeals, those provisions are not implicated by the instant motion.

[5]    Following its decision in *Suarez*, the same District Court (and presiding Judge) denied the *Brown* Plaintiffs' request for a preliminary injunction. *Brown*, Order, (Dist. Ct. Dkt. ECF No. 20). Although the Plaintiffs in *Brown* primarily sought an order allowing 18-to-20-year-olds to obtain concealed-carry licenses, the District Court determined that their request for a preliminary injunction was moot to the extent they sought an injunction of the Section 6106(a)(1) vehicle provision in light of its decision in *Suarez*. *Ibid.* The *Brown* Plaintiffs appeal from that order, and purport to "join" the *Suarez* Plaintiffs' motion in this Court. Motion at 1 n.2.

# ARGUMENT

## I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY STAYING ITS ORDER ENJOINING ENFORCEMENT OF THE VEHICLE PROVISION PENDING APPEAL.

*Suarez* Plaintiffs fail to demonstrate that the District Court was wrong to stay its own order pending appeal. When a court is deciding whether to grant a stay, it weighs the following factors: (1) whether the applicant has demonstrated a likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other interested parties; and (4) whether a stay will serve the public interest. *Indus. Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 80 (3d Cir. 1996); *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015). These are "interrelated" considerations that must be balanced on a "sliding scale," rather than necessary prerequisites. *In re Revel AC*, 802 F.3d at 571; *see also Serv. Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.").

Insofar as the District Court's stay implicates questions of law—*i.e.*, whether the Commissioner demonstrated a likelihood of success on the merits—this Court exercises plenary review. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 61 (3d Cir. 1991). But when it comes to the equitable factors and the District Court's fashioning of the stay remedy, this Court reviews for abuse of discretion, "giving

proper regard for the district court's feel of the case." *Ibid.*; *In re Revel AC*, 802 F.3d at 567.

**a. THE DISTRICT COURT CORRECTLY DETERMINED THAT THE COMMISSIONER HAS A REASONABLE CHANCE OF SUCCEEDING ON APPEAL.**

In the context of a stay pending appeal, the movant establishes a likelihood of success on the merits when he demonstrates "a reasonable chance, or probability, of winning." *In re Revel AC*, 802 F.3d at 568. The movant should make a showing that is "significantly better than negligible but not greater than 50%[.]" *Id.* at 571. Tribunals are more likely to stay their own orders pending appeal where, as here, "they have ruled on an admittedly difficult legal question and the equities of the case suggest that the status quo should be maintained." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844–45 (D.C. Cir. 1977); *Prometheus Radio Project v. F.C.C.*, 2003 WL 22052896, at *1 (3d Cir. Sept. 3, 2003) ("Given the magnitude of this matter and the public's interest in reaching the proper resolution, a stay is warranted pending thorough and efficient judicial review.") (citing, *inter alia*, *Washington Metro.*, *supra*); *First Amend. Coal. v. Jud. Inquiry & Rev. Bd.*, 584 F. Supp. 635, 638 (E.D. Pa. 1984) (granting a stay in a case involving an "important issue" that rested "on an essentially untested constitutional analysis").

*Suarez* Plaintiffs maintain that the Commissioner failed to demonstrate likelihood of success on the merits below, baldly asserting that the Commissioner's

stay brief "merely repeated the same arguments the [district] court considered and rejected[.]" Motion at 9. Not so. In his stay brief below, the Commissioner highlighted three errors in the District Court's underlying decision that gave him at least a "reasonable chance" of succeeding on appeal. *Suarez*, Commissioner's Stay Br. at 3-8 (Dist. Ct. Dkt. ECF No. 75). And those errors focused on *recent* legal developments that *post-date* the Commissioner's *2022* briefing on the merits. *Ibid.* Thus, *Suarez* Plaintiffs' effort to cast the Commissioner's stay brief as repetitive of his merits brief is pure balderdash. *Compare ibid. with* Commissioner's Merits Br. (Dist. Ct. Dkt. ECF No. 43). In his stay brief below, the Commissioner identified the following three errors in the District Court's underlying decision:

*First*, in concluding that Section 6206(a)(1)'s vehicle provision violates the Second Amendment, the District Court relied heavily on this Court's now-vacated opinion in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024). Although the District Court acknowledged that *Range* had been vacated, it nonetheless treated *Range*'s methodology as good law and cited that vacated opinion dozens of times. *See, e.g.*, *Suarez*, Memorandum at 22-24, 39 (Dist Ct Dkt. ECF No. 61).

That reliance overlooked the fact that *Range* "track[ed] precisely the Fifth Circuit's . . . opinion in *United States v. Rahimi*," under which "any difference

between a historical law and contemporary regulation defeats an otherwise-compelling analogy." *Range*, 69 F.4th at 118, 130 (Krause, J., dissenting) (emphasis in original).  In *Rahimi*, the High Court expressly rejected that approach in Second Amendment cases and clarified that "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *United States v. Rahimi*, 144 S.Ct. 1889, 1897 (2024) (quoting *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 30 (2022)). "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S.Ct. at 1898 (citing *Bruen*, 597 U.S. at 26-31) *see also id.* at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under *Bruen* demands a wider lens: Historical regulations reveal a principle, not a mold."). The High Court thus cautioned against placing undue weight on the absence of historical firearms regulations on a particular topic at the Founding because "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 144 S. Ct. at 1898-1899; *see also id.* at 1924-1926 (Barrett, J., concurring). By following *Range*'s demand for Founding-era historical twins, the District Court ran afoul of *Rahimi*.

*Second*, the District Court assumed that this Court's historical analysis in *Lara v. Comm'r Pa. State Police*, 91 F.4th 122 (3d Cir. 2024) remains good law following *Rahimi*. *Suarez*, Memorandum at 34 n.24 (Dist. Ct. Dkt. ECF No. 61) (quoting *Lara*,

91 F.4th at 134). The District Court concluded that *Lara* precluded any reliance on analogous laws from the Reconstruction era. *Suarez*, Memorandum at 34 n.24 (Dist. Ct. Dkt. ECF No. 61) (quoting *Lara*, 91 F.4th at 134). But in *Rahimi*, the High Court specifically declined to resolve the question of whether "courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope." *Rahimi*, 144 S. Ct. at 1898 n.1. And several Justices emphasized that post-ratification historical sources from the 19th-century constitute a "critical tool of constitutional interpretation." *Rahimi*, 144 S. Ct. at 1918 (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008)); *see also id.* at 1925 (Barrett, J., concurring) ("To be sure, postenactment history can be an important tool.").

*Rahimi* thus calls into doubt the continued vitality of *Lara*'s holding that a "hint" in *Bruen* foreclosed any reliance on post-enactment history from the mid-to-late-1800s. *Lara*, 91 F.4th at 133. For this reason, the Commissioner requested that the High Court grant certiorari in *Lara*, summarily vacate, and remand for reconsideration (GVR) in light of *Rahimi*, just as the High Court has done with eight other Second Amendment petitions since deciding *Rahimi* (including *Range*). *See Paris v. Lara, et al.*, Pet. for Cert. at 11-13, Dkt. 24-93 (U.S. Jul. 25, 2024); *see also Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (the standard for a GVR order is whether there is "reasonable probability" that further reconsideration in light of an

intervening decision would change the result").[6] If *Lara* is vacated by the High Court, this Court will not be bound by *Lara*'s narrow approach to history, and thus could readily conclude that analogous Reconstruction-era laws provide a sufficient historical basis for Pennsylvania's law. *See Suarez*, Memorandum at 34 (Dist. Ct. Dkt. ECF No. 61).

*Third*, the District Court determined that Pennsylvania's vehicle provision is facially unconstitutional in *all applications*, even though the Supreme Court in *Rahimi* disfavored facial challenges in Second Amendment cases and emphasized that it is the "most difficult challenge to mount successfully." *Rahimi*, 144 S.Ct. at 1903; *id.* at 1907 (Gorsuch J., concurring). That difficulty stems from the fact that a challenger asserting a facial challenge must demonstrate that "no set of circumstances exists" under which the law would be valid. *Rahimi*, 144 S.Ct. at 1903.

Here, Plaintiffs fell well short of satisfying that high burden. Plaintiffs failed to demonstrate that the vehicle provision could not be constitutionally applied against someone who committed a serious violent felony like aggravated assault, or against someone who has been adjudicated mentally ill. *Accord Heller*, 554 U.S. at

---

[6]    The Commissioner appreciates that *Lara* has not yet been vacated. But, when assessing whether the Commissioner has a "reasonable chance" of success on appeal, this Court can and should consider the likelihood that *Lara* may be vacated by the Supreme Court.

626-27 (stating that prohibitions on the possession of firearms by "felons and the mentally ill" are "presumptively lawful"). Because it cannot be said that "no set of circumstances exists" under which the vehicle provision is valid, the District Court should not have enjoined all enforcement of that provision.[7]

For all of these reasons, the Commissioner has at least a reasonable chance of succeeding in this appeal. As the District Court noted, reasonable jurists may disagree over the proper way to analyze the historical record in this case. In fact, judges in this Circuit have done just that in recent Second Amendment cases. *See, e.g.*, *Lara*, 91 F.4th 140 (Restrepo, J., dissenting); *see also Lara v. Comm'r Pa. State Police*, 95 F.4th 156, 157-66 (3d Cir. 2024) (Krause, J., dissenting from the denial of en banc). But, as the District Court correctly recognized, the fact that this is a difficult and unsettled question over which reasonable jurists may disagree counsels in favor of finding that the Commissioner has a reasonable chance of succeeding on

---

[7]    For this reason, if this Court decides to lift the stay, it should modify the District Court's injunction so that it applies only to the *Suarez* Plaintiffs.

*Brown* Plaintiffs never moved for an injunction pending appeal in the District Court, as required under Fed.R.App.P. 8, and instead improperly attempt to piggyback on the *Suarez* Plaintiffs' request. Therefore, this Court should not enjoin enforcement of the Section 6106(a)(1) vehicle provision against 18-to-20-year-olds during this appeal. *See, e.g.*, *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 Fed.Appx. 377, 389 (3d Cir. 2020). ("Though the Campaign styles its motion as seeking a stay or preliminary injunction, what it really wants is an injunction pending appeal. But it neither requested that from the District Court during the appeal nor showed that it could not make that request, as required by Federal Rule of Appellate Procedure 8(a)(2)(A). That failure bars the motion.").

appeal. *Suarez*, Stay Order at 3 (Dist. Ct. Dkt. ECF No. 81) (". . . appellate jurists might view the historical evidence . . . sufficient to satisfy the government's evidentiary burden, especially in light of lingering uncertainties about the proper application of the *Bruen* standard . . " (internal quotation marks omitted); *see also Suarez*, Memorandum at 24-25 n.17 (Dist. Ct. Dkt. ECF No. 61) ("[T]he jurist struggling to arrive at a workable standard in light of these lingering uncertainty will, at the very least, find themselves in good company.").

    **b. THE EQUITIES WEIGH HEAVILY IN FAVOR OF PERMITTING PENNSYLVANIA TO CONTINUE ENFORCING ITS DEMOCRATICALLY ENACTED FIREARMS LAW DURING THIS APPEAL.**

Turning to the remaining factors, the District Court did not abuse its discretion when it determined that, on balance, the equities warranted a stay.

    **i. THE DISTRICT COURT CORRECTLY FOUND THAT THE STATE POLICE AND THE PUBLIC WOULD BE HARMED WITHOUT A STAY.**

In balancing the equities, the District Court looked to this Court's recent decision in *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, where this Court clarified how federal courts should balance the equities when deciding whether to maintain the status quo in Second Amendment cases. 108 F.4th 194 (3d Cir. 2024).[8] There, this Court recognized that when the

---

[8]    Although *Delaware State Sportsmen's Ass'n* involved a preliminary injunction, the equitable considerations for issuance of a preliminary injunction and issuance of a stay overlap considerably, and the underlying purpose of both is to

government is a party, its interests "merge" with the public's interests, and emphasized that "'[t]here is always a public interest in prompt execution' of the laws." *Id.* at 205 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). This Court thus called for "caution" before enjoining democratically-enacted gun laws, particularly when "federal courts are asked to block states from enforcing their laws" because it "threatens federalism and the separation of powers[.]" *Ibid.* (citing, *inter alia*, *Younger v. Harris*, 401 U.S. 37, 53-54 (1971)).

Weighing the facts before it, the District Court determined that, without a stay, the State Police and law enforcement officials throughout the Commonwealth would encounter more danger during traffic stops. That is because an injunction against enforcing the vehicle provision will naturally have the effect of increasing the number of motorists who may travel with loaded, operable firearms, but who have not undergone the same background checks as those with licenses. And in the case of 18-to-20-year-olds, they undergo no background checks before even *acquiring* handguns, as federal law prohibits 18-to-20-year-olds from purchasing handguns from federally-licensed dealers. 18 U.S.C. § 922(b)(1).

Loaded firearms being transported in vehicles by unlicensed individuals thus threatens officer safety, as traffic stops are already one of the most dangerous tasks

---

preserve the status quo while litigation proceeds. *See, e.g.*, *In re Revel AC*, 802 F.3d at 568 (discussing the "overlap" between the factors for a stay pending appeal and a preliminary injunction).

that an officer performs. *Suarez*, Stay Order at 3 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1997) (recognizing the "inordinate risk confronting an officer as he approaches a person in an automobile")). *See also Suarez*, Decl. of Cpl. Collins at ¶ 24 (Dist. Ct. Dkt. ECF No. 75-2). Without Section 6106(a)(1)'s vehicle provision, officers making good faith traffic stops will be more likely to encounter a motorist with a gun who has not undergone any background check and, in the case of the *Suarez* Plaintiffs, are convicted felons. *Suarez*, Decl. of ADA Gonzalez at ¶¶ 6-7 (Dist. Ct. Dkt. ECF No. 75-1).

A halt on all enforcement of the vehicle provision will also complicate, and potentially jeopardize, hundreds of prosecutions throughout the Commonwealth. As the Commissioner demonstrated below, a violation of Section 6016(a)(1)'s vehicle provision is not what causes a motorist to be pulled over in the first place. Rather, 6106(a)(1) violations are observed only *after* an initial traffic violation is observed. And even then, a stand-alone Section 6106(a)(1) charge is rare, as Section 6106(a)(1) charges are typically brought in conjunction with various other criminal charges, *e.g.*, drug offenses, DUI, aggravated assault, or discharging firearms into occupied structures. *Suarez*, Decl. of Cpl. Collins at ¶ 27 (Dist. Ct. Dkt. ECF No. 75-2); *Suarez*, Decl. of ADA Gonzalez at ¶¶ 8, 11 (Dist. Ct. Dkt. ECF No. 75-1); *Suarez*, Decl. of ADA Rees at ¶¶ 8-13 (Dist. Ct. Dkt. ECF No. 75-3).

Between 2022 and 2023, PSP initiated 935,852 total traffic stops, 767 of which resulted in Section 6106(a)(1) charges. *Suarez*, Decl. of Cpl. Collins at ¶¶ 17-21 (Dist. Ct. Dkt. ECF No. 75-2). In 580 of those cases (or 75.7%), Section 6106(a)(1) charges were brought alongside other serious criminal offenses. *Ibid.* In Lancaster County—where Plaintiff Daniel Binderup resides— Section 6106(a)(1) charges were brought 173 times in 2023, 158 of which (or 91.3%) were accompanied by other serious criminal charges. *Suarez*, Decl. of ADA Gonzalez at ¶ 13 (Dist. Ct. Dkt. ECF No. 75-1). In Bucks County—where Plaintiff Daniel Miller resides— Section 6106(a)(1) charges were brought 91 times in the past year, 80 of which (or 87.9%) were accompanied by other serious criminal charges. *Suarez*, Decl. of ADA Rees at ¶¶ 9-11 (Dist. Ct. Dkt. ECF No. 75-3). And in Philadelphia, there were 20,069 arrests for Section 6016 violations between 2019 and 2023, 20,050 of which (or 99.9%) included additional charges. Decl. of G. Kikuchi at ¶¶ 6-7 (Dist. Ct. Dkt. ECF No. 75-4).[9]

A halt on any enforcement of the vehicle provision would thus complicate hundreds of prosecutions throughout the Commonwealth—particularly if the violation of the vehicle provision provided the initial probable cause to further

---

[9]    Although Philadelphia, Bucks, and Lancaster are not parties to this action and were thus not bound by this District Court's original injunction, the District Court's published opinion will undoubtedly impact litigation and prosecution throughout the Commonwealth.

investigate for other offenses. *Suarez*, Decl. of ADA Gonzalez at ¶ 14 (Dist. Ct. Dkt. ECF No. 75-1); Decl. of ADA Rees at ¶¶ 14-15 (Dist. Ct. Dkt. ECF No. 75-3). And, moving forward, law enforcement officials will not be able to uncover those other offenses in the first place. Decl. of Cpl. Collins at ¶¶ 29-31 (Dist. Ct. Dkt. ECF No. 75-2).

Given this, the District Court did not abuse its discretion when it determined that the failure to grant a stay would harm the State Police and the general public.

### ii. THE DISTRICT COURT CORRECTLY DETERMINED THAT MAINTAINING THE STATUS QUO IS UNLIKELY TO INJURE *SUAREZ* PLAINTIFFS.

In contrast to the concrete, irreparable injury to the State Police and the public without a stay, *Suarez* Plaintiffs will suffer no imminent injury if the Commonwealth's decades-old law remains intact during the Commissioner's appeal.

As noted, stand-alone charges for violating Section 6106(a)(1)'s vehicle provision are rare, so *Suarez* Plaintiffs' likelihood of being arrested and prosecuted is low. *Suarez*, Decl. of ADA Gonzalez at ¶ 8 (Dist. Ct. Dkt. ECF No. 75-1); *Suarez*, Decl. of ADA Rees at ¶¶ 8-13 (Dist. Ct. Dkt. ECF No. 75-3). And *Suarez* Plaintiffs still have ample room to exercise their rights to keep and bear arms by possessing and carrying loaded firearms in their homes and places of business, and openly in

public throughout the Commonwealth. They simply have to keep their guns unloaded and secured while traveling in a vehicle.

In response, the *Suarez* Plaintiffs repeatedly—and falsely—insist that they could be arrested for traveling with *unloaded* firearms in their vehicles. Motion at 4, 16-17. But this is true only if one ignores the 15 enumerated exceptions to the licensing requirement, which specifically gives them the right to carry unloaded firearms as they travel to-and-from various places. *See, e.g.*, 18 Pa.C.S. § 6106(b) (exception to licensing requirement allowing individuals to transport unloaded firearms when traveling to-and-from target practice); 18 Pa.C.S. § 6106(b)(8) (exception to licensing requirement allowing individuals to transport "a firearm which is not loaded and in a secure wrapper" to-and-from various places); 18 Pa.C.S. § 6106(b)(9) (exception to licensing requirement for individuals transporting firearms for hunting). The fact that these exceptions are inconvenient for the *Suarez* Plaintiffs' narrative provides no basis for ignoring them. *Suarez* Plaintiffs do not—because they cannot—prove that they face any risk of arrest or prosecution for transporting unloaded firearms in their vehicles as they travel to-and-from places where they seek to legally possess and carry firearms.

At root, *Suarez* Plaintiffs' request for an injunction prohibiting the Commissioner from enforcing the vehicle provision against *anyone* in the Commonwealth is based on nothing more than their broad "desire" to carry loaded

firearms in their vehicles. *See, e.g.*, *Suarez*, Decl. of Julio Suarez ¶ 13 (Dist. Ct. Dkt. ECF No. 39-1). But, in *Delaware State Sportsmen's Ass'n*, this Court rejected similar claims of harm by plaintiffs seeking to enjoin Delaware from enforcing its law. 108 F.4th at 198. There, as here, the plaintiffs' claim of imminent harm was based on a series of vague affidavits expressing a broad desire to obtain the banned gun in question, but failed to allege that the state had "tried to enforce the disputed laws against them" or that they had a "time-sensitive need" for the guns. *Ibid.* This Court determined that this evidence was not necessary to preserve the status quo and did not outweigh the state and public interests in enforcing the law. *Suarez* Plaintiffs' proffered evidence here is equally weak, and does not support upending a decades-old status quo during the Commissioner's appeal.

      **c.** **S**UAREZ **P**LAINTIFFS' **A**RGUMENTS **H**IGHLIGHTING **L**OCAL **D**ISTRICT **C**OURT **R**ULES AND THE **T**IMING OF THE **C**OMMISSIONER'S **S**TAY **M**OTION **B**ELOW **L**END NO **S**UPPORT TO **T**HEIR **R**EQUEST.

      Perhaps recognizing the weakness of their request to lift the District Court's stay, *Suarez* Plaintiffs spend significant portions of their filing highlighting various petty technicalities about the Commissioner's filings in the District Court. *Suarez* Plaintiffs open their argument with a lengthy complaint about the Commissioner's purported non-compliance with various local rules in the Middle District of Pennsylvania. Motion at 5-6. And they close their argument with a tedious

accounting of how many days after the judgment the Commissioner filed his brief supporting his stay request below. Motion at 19-20.

*Suarez* Plaintiffs' arguments in this regard are nothing more than a mechanical rehash of the unsound arguments they presented to the District Court below. *See, e.g.*, *Suarez*, Br. Opposing Stay at 4-5 (Dist. Ct. Dkt ECF No. 77). Below, the Commissioner explained why these arguments presented no basis for denying the requested stay. *Suarez*, Commissioner's Stay Reply at 2-5 (Dist. Ct. Dkt. ECF No. 80). And the District Court obviously found Plaintiffs' arguments to be unpersuasive. There was good reason for the District Court to disregard these arguments: they are patently frivolous.

The fact that the affidavits in support of the Commissioner's stay motion were attached to his supporting brief rather than his motion presents no basis for finding that the District Court abused its discretion when it granted the stay. Nor does the fact that the Commissioner's brief in support of the stay below did not include a lengthy recitation of the factual and procedural history of the case—a case all parties and the District Court were intimately familiar with. Plaintiffs do not—because they cannot—explain how they were possibly prejudiced by these purported deficiencies.

*Suarez* Plaintiffs' arguments about timing of the Commissioner's motion below are equally vapid. *Suarez* Plaintiffs maintain that the timing of the Commissioner's motion somehow "indicate[s] a lack of concern for any harm"

caused by an injunction on all enforcement of the vehicle provision. Motion at 20. But the opposite is true. As the Commissioner explained in his motion below, once the District Court entered its order enjoining enforcement of the vehicle provision, the State Police, working with its law enforcement partners throughout the Commonwealth, undertook an extensive examination of data on Section 6106(a)(1) enforcement in recent years. That complex analysis was completed as swiftly as possible. The fact that the Commissioner was diligent when documenting the harm that an injunction of Section 6106(a)(1) would cause in no way indicates a lack of concern about that harm. *Suarez* Plaintiffs were not prejudiced by the timing of the motion, and they point to no rule, statute, or case that required the Commissioner to move for a stay instantaneously.

## II.    *SUAREZ* PLAINTIFFS FAIL TO PRESENT EXCEPTIONAL REASONS WARRANTING EXPEDITED REVIEW.

If it does not vacate the District Court's stay, *Suarez* Plaintiffs request, in the alternative, that this Court expedite this appeal. This Court's Local Rules require a party seeking expedited briefing and argument to set forth "the exceptional reason that warrants expedition" in its motion. 3d Cir. L.A.R. 4.1.The only reasons *Suarez* Plaintiffs proffer is that this case involves alleged constitutional violations and "has already been pending for 3.5 years[.]" Motion at 20-21. These factors are hardly exceptional. This Court hears countless cases involving alleged constitutional violations, many of which took years to resolve in the District Court before an

21

appeal. The *Suarez* Plaintiffs' justification, if accepted, would warrant expedited review in every constitutional case. The exception would swallow the rule.

*Suarez* Plaintiffs present no exceptional reason warranting expedited review.[10]

### III.   THIS COURT SHOULD HOLD THIS CASE *C.A.V.* PENDING RESOLUTION OF *KOONS V. ATTORNEY GENERAL OF NEW JERSEY*.

Far from expedited review, this Court should instead delay briefing in this case until after *Koons* is decided. As noted, in *Koons* this Court will decide the constitutionality of, *inter alia*, a New Jersey statute that prohibits the transportation of loaded, operable firearms in private vehicles. N.J. Stat. Ann. § 2C:58-4.6(b)(1). That case has been fully briefed and argued. And, given that *Koons* will likely bear on the issues in this case, the most efficient use of judicial resources is to hold further action in this case *C.A.V.* pending *Koons*, consistent with this Court's usual practice when an imminent decision is likely to bear on a later-filed appeal. *See, e.g.*, *Lara*, 21-1832, 3d Cir. Dkt. No. 53 (*sua sponte* holding case *C.A.V.* pending *Bruen*); *Dennison v. Indiana University of Pa., et al.*, 22-2549, 3d Cir. Dkt. No. 36 (*sua sponte* holding case C.A.V. pending *Muldrow v. City of St. Louis*, 601 U.S. 346

---

[10]   In the event this Court grants expedited review, undersigned counsel agrees to the briefing schedule outlined in *Suarez* Plaintiffs' motion. That agreement in no way concedes that *Suarez* Plaintiffs have established the necessity of expedited review, however. 3d Cir. L.A.R. 4.1. ("the non-moving party may agree to a proposed briefing schedule without conceding that expedition is necessary").

(2024)); *Carter v. Baumcratz*, 21-3252, 3d Cir. Dkt. No. 26 (holding *C.A.V.* pending *Prater v. Pa. Dep't of Corr.*, 76 F.4th 184 (3d Cir. 2023)).

## CONCLUSION

The request to lift and vacate the stay should be denied. The alternative request to expedite should be denied. The Court should hold this case *C.A.V.* pending *Koons, et al v. Attorney General of New Jersey*, 23-1900 & 23-2043.

MICHELLE A. HENRY
Attorney General

By:     /s/ Daniel B. Mullen

DANIEL B. MULLEN
Deputy Attorney General
Bar No. 321525 (Pa.)

SEAN A. KIRKPATRICK
Chief Deputy Attorney General
Chief, Appellate Litigation Section

Office of Attorney General
1251 Waterfront Place
Pittsburgh, PA 15222
Phone: (412) 235-9067

DATE: September 27, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel B. Mullen, Deputy Attorney General, hereby certify that on

September 27, 2024, I served the foregoing document on the following:

Joshua Prince, Esq.
Prince Law Offices
646 Lenape Road
Bechtelsville, PA 19505
*Counsel for Plaintiffs*
(via CM/ECF)

*/s/ Daniel B. Mullen*
**DANIEL B. MULLEN**
**Deputy Attorney General**